# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESUS DOMINGO-ROS; YONI JACINTO GARCIA; and EDWIN JUAREZ-COBON,<br><br>                              Petitioners-Plaintiffs,<br><br>   v.<br><br>GREGORY J. ARCHAMBEAULT, San Diego Field Office Director, Immigration and Customs Enforcement, Enforcement and Removal Operations; and JEREMY CASEY, Warden, Imperial Regional Detention Facility, Calexico, California,<br><br>                              Respondents-Defendants. | Case No.:  25-cv-1208-DMS-DEB<br><br>**ORDER CONFIRMING TEMPORARY RESTRAINING ORDER** |

Pending before the Court is Petitioners' Application for Temporary Restraining Order ("TRO").  (TRO, ECF No. 2).  The matter came on for hearing on May 16, 2025. Niels Frenzen appeared for Petitioners, and Lisa Hemann and Erin Dimbleby appeared for Respondents.  After hearing from counsel, the Court **GRANTED** Petitioners' Application for TRO and entered a minute order confirming the ruling.  For the following reasons, the Court **CONFIRMS** its TRO and previously set hearing dates, **SETS** a status conference for **Monday, May 19, 2025** at **3:00 p.m.**, and **ORDERS** the parties to meet and confer regarding additional briefing.

# I.    BACKGROUND

Petitioners Jesus Domingo-Ros, Yoni Jacinto Garcia, and Edwin Juarez-Cobon are in the custody of Immigration and Customs Enforcement ("ICE") and detained at the Imperial Regional Detention Facility in Calexico, California, following their warrantless arrests for "unlawful entry" on April 22, 2025.  The arrests were effected by U.S. Border Patrol Agents ("BPAs" or "Agents") in a Home Depot parking lot in Pomona, California, approximately 191 miles north of the Calexico, California Port of Entry.  (Petition for Writ of Habeas Corpus ("Petition"), ECF No. 1).  On the morning of April 22, at 4 a.m., Border Patrol Agents traveled to Pomona to execute an active arrest warrant for Martin Majin-Leon, a Mexican national.  (*Id.* at 5); (ECF No. 2-2).  The Agents apprehended Majin-Leon at his place of employment at 9:07 a.m.  (*Id.* at 5–6).  After achieving the purpose of their dispatch to the area, the Agents drove to a nearby "debriefing staging location" at a Home Depot parking lot located at 2707 S. Towne Avenue in Pomona.  (*Id.* at 6); (Petition, at 5).

The details of the encounter between Petitioners and the BPAs are disputed.  Petitioners allege they were among at least nine individuals present at Home Depot in the hopes of receiving informal work as day laborers.  (*Id.*).  When the Agents arrived, Petitioners and others attempted to leave by walking or running away.  (*Id.*).  Before they could leave, several Agents approached and conducted "detentive stops without reasonable suspicion."  (*Id.*).  After asking questions and apparently learning that Petitioners were citizens of Guatemala without authorization to be in the United States, they were arrested and transported to the El Centro Sector Centralized Processing Center in Imperial County, California for further questioning.  (*Id.*).

According to the Government, the BPAs, upon arriving at Home Depot, witnessed several individuals fleeing the scene.  (ECF No. 2-2, at 6).  This "unprovoked flight" prompted them to question several individuals, including Petitioners, through "consensual encounters."  (*Id.*).  These encounters led the Agents to determine that Petitioners were in the United States unlawfully.  (*Id.*).  Petitioners were arrested without a warrant because their "attempt[s] to flee to avoid arrests" made them "flight risk[s]."  (*Id.* at 6, 11, 17).

Following their arrests, Petitioners were issued Expedited Removal Orders pursuant to 8 U.S.C. § 1225(b)(1) and are now at "imminent risk of removal from the United States as a result of being unlawfully arrested[.]" (Petition, at 1). Petitioners filed a petition for writ of habeas corpus with this Court claiming their detention and the process by which their Expedited Removal Orders were issued violated the Fourth and Fifth Amendments to the U.S. Constitution; 8 U.S.C. § 1225(b)(1)(A)(iii)(II) (Expedited Removal Orders "lacked factual basis" that Petitioners were physically present in the United States for less than two years); and 8 U.S.C. § 1357(a)(2) (improper warrantless arrests). (*Id.* at 11). Petitioners seek issuance of (1) a writ of habeas corpus and order of release of Petitioners and (2) an order vacating the Expedited Removal Orders and requiring Respondents to provide Petitioners with hearings pursuant to 8 U.S.C. § 1229a. (*Id.* at 10). Along with their habeas petition, Petitioners filed the subject Application for TRO seeking to prohibit removal from the United States and transfer to a detention facility outside the Southern District of California pending their challenge to the expedited removal process. (TRO, at 3).

## II.    LEGAL STANDARD

### A. Temporary Restraining Order

The standard for issuing a TRO is identical to the standard for issuing a preliminary injunction. *See Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.*, 887 F.Supp. 1320, 1323 (N.D. Cal. 1995). "A party seeking a preliminary injunction must meet one of two variants of the same standard." *All. for the Wild Rockies v. Pena*, 865 F.3d 1211, 1217 (9th Cir. 2017). Under the *Winter* standard, a party entitled to a preliminary injunction if it demonstrates (1) "that [it] is likely to succeed on the merits," (2) "that [it] is likely to suffer irreparable harm in the absence of preliminary relief," (3) "that the balance of equities tips in [its] favor," and (4) "that an injunction is in the public interest." *Winter*, 555 U.S. at 20.

Under the Ninth Circuit's "'serious questions' test—a 'sliding scale' variant of the *Winter* test— . . . a party is entitled to a preliminary injunction if it demonstrates (1)

1   'serious questions going to the merits,' (2) 'a likelihood of irreparable injury,' (3) 'a

2   balance of hardships that tips sharply towards the plaintiff,' and (4) 'the injunction is in the

3   public interest.'" *Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180,

4   1190 (9th Cir. 2024) (quoting *All. for the Wild Rockies*, 865 F.3d at 1217).  Under the

5   "serious questions" test, "if a plaintiff can only show that there are serious questions going

6   to the merits—a lesser showing than likelihood of success on the merits—then a

7   preliminary injunction may still issue if the balance of hardships tips *sharply* in the

8   plaintiff's favor, and the other two *Winter* factors are satisfied." *All. for the Wild Rockies*,

9   865 F.3d at 1217 (quoting *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291

10  (9th Cir. 2013) (internal quotations omitted)) (emphasis in original).  A plaintiff need

11  demonstrate likely success or serious questions to only one of their claims to receive a

12  TRO.  *See Ozkay v. Equity Wave Lending, Inc.*, 2020 WL 12764953, at *2 (N.D. Cal.

13  Nov. 25, 2020).

14  　　　Injunctive relief can be prohibitory or mandatory.  "A prohibitory injunction

15  prohibits a party from taking action and 'preserve[s] the status quo pending a determination

16  of the action on the merits.'" *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,

17  571 F.3d 873, 878 (9th Cir. 2009) (quoting *Chalk v. U.S. Dist. Ct.*, 840 F.2d 701, 704 (9th

18  Cir. 1988)).  "A mandatory injunction orders a responsible party to take action[,] . . . goes

19  well beyond simply maintaining the status quo [p]endente lite[,] [and] is particularly

20  disfavored." *Id.* at 879 (internal quotation marks and citations omitted).  "The status quo

21  means 'the last, uncontested status which preceded the pending controversy.'" *N.D. ex rel.*

22  *Parents Acting as Guardians Ad Litem v. State of Haw. Dep't of Educ.*, 600 F.3d 1104,

23  1112 n.6 (9th Cir. 2010) (quoting *Marlyn Nutraceuticals, Inc.*, 571 F.3d at 879).  Petitioners

24  seek a prohibitory injunction because they seek to preserve the status quo preceding this

25  litigation—their physical presence in the United States free from detention.

26  　　　A district court may consider "the parties' pleadings, declarations, affidavits, and

27  exhibits submitted in support of and in opposition to the [motion for temporary restraining

28  order]." *Cal. Rifle & Pistol Ass'n, Inc. v. Los Angeles Cnty. Sheriff's Dep't*, 745 F.Supp.3d

1037, 1048 (C.D. Cal. 2024); *see also Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009) (finding district court did not abuse its discretion in granting preliminary injunction when it relied on hearsay evidence and "the many exhibits, affidavits, declarations and factual allegations which have been submitted . . . by all parties . . . throughout the course of this litigation"). Any evidentiary issues "properly go to weight rather than admissibility." *Am. Hotel & Lodging Ass'n v. City of Los Angeles*, 119 F.Supp.3d 1177, 1185 (C.D. Cal. 2015).

### III.    DISCUSSION

Petitioners seek a TRO "enjoining Respondents from removing Petitioners from the United States and from relocating Petitioners outside of the [Southern District of California] pending this litigation." (TRO, at 3). Petitioners allege their Expedited Removal Orders are based on information elicited from unlawful detentions and lack a proper factual basis regarding the time they were physically present in the United States. Petitioners also allege that their detention and the process by which the Expedited Removal Orders were issued violated the Fourth and Fifth Amendments and 8 U.S.C. § 1357(a)(2). For the reasons discussed, Petitioners have met their burden for a TRO.

### A. Serious Questions Going to the Merits

Petitioners' first claim for relief alleges Fourth Amendment violations occurred when they were stopped and questioned without reasonable suspicion. Their third claim for relief alleges Fifth Amendment procedural due process violations occurred when they were: (a) not afforded an adequate process to challenge the "manner in which the Expedited Removal process [was] used against them within the interior of the United States," and (b) precluded from "exercising their statutory right to representation by an attorney . . . , and exercising the right to be afforded sufficient time to gather and present evidence in their defense, including evidence pertaining to the crucial [less than] two-year continuous physical presence" requirement for expedited removal. (Petition, at 8–9) ("Expedited Removal Orders may only be issued to an individual who is encountered within the interior of the United States away from an international border if certain requirements are met,

1    including the requirement that the individual have been physically present in the United

2    States for less than two years.") (citing 8 U.S.C. § 1225(b)(1)(A)(iii)(II)).

3          Petitioners argue they are unquestionably protected by the Fifth Amendment as they

4    were contacted in the interior of the United States (not at the international border), citing

5    *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all

6    'persons' within the United States, including aliens, whether their presence here is lawful,

7    unlawful, temporary, or permanent."). (TRO, at 6). Petitioners also argue they are

8    protected by the Fourth Amendment from unlawful detention and arrest. There is no

9    question the Fourth Amendment applies to "the people" of the United States; however,

10   there is debate as to the application of the right to *all* noncitizens within the United States.

11   *See United States v. Verdugo-Urquidez*, 494 U.S. 259, 265 (1990) (stating text of Fourth

12   Amendment "suggests that 'the people' protected by the Fourth Amendment . . . refers to

13   a class of persons who are part of a national community or who have otherwise developed

14   sufficient connection with this country to be considered part of that community.") (internal

15   citation omitted).

16         Petitioners proffered at oral argument that they have been physically present in the

17   United States for more than two years and that they were unquestionably contacted by

18   Border Patrol "within" the United States. The record before the Court raises serious

19   questions regarding whether Petitioners' Fourth and Fifth Amendment rights were violated

20   and whether the expedited removal process was improvidently employed by Respondents.

21         If Petitioners are protected by the Fourth Amendment, the investigatory stops alleged

22   here are justified only if there was reasonable suspicion that "criminal activity [was] afoot."

23   *U.S. v. Willis*, 431 F.3d 709, 714 (9th Cir. 2005) (quoting *United States v. Arvizu*, 534 U.S.

24   266, 273 (2002)). "Reasonable suspicion is formed by 'specific, articulable facts which,

25   together with objective and reasonable inferences, form the basis for suspecting that the

26   particular person detained is engaged in criminal activity.'" *U.S. v. Lopez-Soto*, 205 F.3d

27   1101, 1105 (9th Cir. 2000) (quoting *United States v. Michael R.*, 90 F.3d 340, 346 (9th Cir.

28

1996)).  The Government bears the burden of providing "specific and articulable facts" to support reasonable suspicion.  *See Terry v. Ohio*, 392 U.S. 1, 21 (1968).

Based on the present record, Petitioners have advanced serious questions regarding whether the Government sufficiently provided "specific and articulable facts" to support a finding of reasonable suspicion.  The Government provided near-identical explanations for the detentions of Petitioners Domingo-Ros and Garcia in their respective I-213 Forms.  First, the Government notes that when the Agents arrived at the Home Depot staging location they observed "multiple subjects running from within the area." (ECF No. 2-2, at 6, 11).  The Agents state they "conducted consensual encounters with nine individuals" and determined that they were without legal documentation "allowing them to enter, remain, or travel in the United States."  (*Id.*).  Two of those nine individuals were Petitioners Domingo-Ros and Garcia.  (*Id.*).  While "nervous, evasive behavior is a pertinent factor in determining reasonable suspicion," *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000), Petitioners' I-213 Forms are notably silent as to whether Petitioners Domingo-Ros and Garcia were among the individuals who attempted to flee.  (*Id.*).  Further, the I-213 Forms offer sparse explanation as to how the "consensual encounters" allowed the Agents to determine that Petitioners were without status and how the encounters could be consensual if individuals were running away.  (*Id.*).  In short, the facts set out in the I-213 Forms are inadequate to determine if the encounters were consensual and, if not, whether there was reasonable suspicion to justify the detentions.  Accordingly, serious questions remain as to whether these encounters were lawful and whether the information obtained was lawfully used against Petitioners.

Petitioner Juarez-Cobon's I-213 Form states he "walked away" as an Agent stepped out of his vehicle and "came to a stop on his own accord" once the Agent identified himself. (ECF No. 2-2, at 16).  It is unclear if the encounter was consensual or based on reasonable suspicion to briefly detain and ask immigration-related questions.  The encounter apparently was cut short by "several hostile individuals from the public" who approached the Agent and recorded his actions.  (*Id.*).  Accordingly, as with Petitioners Domingo-Ros

and Garcia, serious questions remain whether the encounter was consensual and, if not, whether the Agent had reasonable suspicion to detain and briefly question Petitioner Juarez-Cobon.

Petitioners have also raised serious questions whether Fifth Amendment procedural due process rights apply to them and, if so, whether those rights preclude use of the expedited removal process.  Respondents argue that while Petitioners were in the interior of the United States, the expedited removal process treats such individuals as "arriving aliens" without procedural due process rights.  Respondents cite for authority *Mendoza-Linares v. Garland*, 51 F.4th 1146, 1155 (9th Cir. 2022) (stating jurisdiction-stripping provisions of 8 U.S.C. § 1252(a)(2)(A) cover "the 'procedures and policies' that have been adopted to 'implement' the expedited removal process; the decision to 'invoke' that process in a particular case; the 'application' of that process to a particular alien; and the 'implementation' and 'operation' of any expedited removal order"); *Guerrier v. Garland*, 18 F.4th 304, 313 (9th Cir. 2021) (stating Supreme Court abrogated any "colorable constitutional claims" exception to limits placed by § 1252(a)(2)(A)); and *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 138–39 (2020) (rejecting Ninth Circuit's holding that arriving noncitizen has "constitutional right to expedited removal proceedings that conform to the dictates of due process").  However, Respondents elevate a statutory framework over the Constitution and ignore entirely that the foregoing cases all involve apprehension of noncitizens at the international border where procedural due process rights indisputably do not apply to such individuals.  Here, Petitioners were contacted by Agents well within the interior of the United States where constitutional protections may apply.

Finally, Petitioners have raised serious questions that even if the jurisdiction-stripping provisions apply and § 1252(e)(2) does not provide a jurisdictional basis for Petitioners' habeas claims, the "colorable constitutional claim" exception provides an independent basis for the Court's jurisdiction since noncitizens in the interior of the United States, like Petitioners, are entitled to constitutional protections.  *See Webster v. Doe*, 486 U.S. 592, 603 (1988) (stating a "serious constitutional question . . . would arise if a federal

8

statute were construed to deny any judicial forum for a colorable constitutional claim") (internal citation omitted).    Accordingly, Petitioners have satisfied their burden with respect to the first factor.

## B. Likelihood of Irreparable Harm

Under the second *Winter* factor, the Court considers whether Petitioners are likely to suffer irreparable harm in the absence of preliminary injunctive relief.  555 U.S. at 20. If Petitioners are removed, they will lose their ability to challenge the removal process to which they have been subjected.  As Petitioners note, expedited removal is "significantly different" from a "regular" 8 U.S.C. § 1229a removal because in § 1229a proceedings, "a removed noncitizen can 'continue to pursue their petitions for review, and those who prevail can be afforded effective relief by facilitation of their return[.]'"  (TRO, at 8–9) (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)).  No such right exists to continue to pursue a challenge to an Expedited Removal Order after removal from the United States. *See Doe v. McAleenan*, 415 F.Supp.3d 971, 979 (S.D. Cal. 2019), *modified*, 2019 WL 6605882 (S.D. Cal. Dec. 3, 2019) (noting that "non-reviewable erroneous decision" of removal amounts to irreparable harm); *see also Goldie's Bookstore, Inc. v. Superior Ct. of State of Cal.*, 739 F.2d 466, 472 (9th Cir. 1984) ("An alleged constitutional infringement will often alone constitute irreparable harm.").  Therefore, the second *Winter* factor favors Petitioners.

## C. Balance of Equities and Public Interest

When the Government is a party to a case, the third and fourth *Winter* factors—the balance of the equities (hardships) and the public interest—merge.  *See Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken*, 556 U.S. at 435).  It would not be "'in the public's interest to allow the [Government] . . . to violate the requirements of federal law, especially when there are no adequate remedies available.'" *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1069 (9th Cir. 2014) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)).  The public interest in enforcement of immigration laws, although significant, does not override the public interest in protecting the safeguards

1  of the Constitution. Accordingly, the third and fourth factors tip sharply in favor of
2  Petitioners and support preliminary injunctive relief. A TRO is warranted under the
3  circumstances.

### IV.    SCOPE

5  Under Federal Rule of Civil Procedure 65(d), every order granting an injunction
6  must "describe in reasonable detail—and not by referring to the complaint or other
7  document—the act or acts restrained or required." Fed. R. Civ. P. 65(d). "[A]n injunction
8  must be narrowly tailored . . . to remedy only the specific harms shown by the plaintiffs,
9  rather than 'to enjoin all possible breaches of the law.'" *Price v. City of Stockton*, 390 F.3d
10 1105, 1117 (9th Cir. 2004) (quoting *Zepeda v. INS*, 753 F.2d 719, 728 n.1 (9th Cir. 1983)).
11 Considering the findings above, the Court **GRANTS** Petitioners' Application for TRO and
12 prohibits Respondents from removing Petitioners from the United States and relocating
13 Petitioners to a detention facility outside the Southern District of California pending
14 resolution of this litigation.

15 In addition, at the hearing on Friday, May 16, 2025, the Court scheduled an
16 evidentiary hearing on Petitioners' Fourth Amendment claim for **Thursday, May 22, 2025**
17 at **9:00 a.m.**, with an opportunity for the parties to file supplemental briefing by
18 **Wednesday, May 21, 2025** by **4:30 p.m.** The Court also scheduled a hearing on
19 preliminary injunction for **Friday, May 30, 2025** at **1:30 p.m.** The parties will meet and
20 confer regarding scheduling and may request a continuance of the dates.

21 The Court also **SETS** a status conference with the parties on **Monday, May 19, 2025**
22 at **3:00 p.m.** to discuss the scope of the hearing on May 22, 2025, and whether additional
23 briefing should include Petitioners' Fifth Amendment due process claim and related
24 jurisdictional issues.

### V.    CONCLUSION

26 Based on the foregoing, the Court **CONFIRMS** its **GRANT** of Petitioners'
27 Application for TRO and the dates above. **IT IS SO ORDERED.**

28

Dated: May 18, 2025

Hon. Dana M. Sabraw
United States District Judge

25-cv-1208-DMS-DEB